**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TAMMY L. SNYDER,**

                  **Plaintiff,**

**-against-**                                **7:07-CV-0763(TJM/GJD)**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

                  **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I.  INTRODUCTION

Tammy L. Snyder ("Plaintiff") brought this suit under the Social Security Act ("Act"), 42 U.S.C. § § 405(g), 1383(c)(3) to review a final determination of the Commissioner of Social Security ("Commissioner")denying her application for disability insurance benefits "DIB")and Supplemental Security Income ("SSI").  Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying her applications for benefits was not supported by substantial evidence and was contrary to the applicable legal standards.  The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct

1

legal standards.

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for SSI and DIB on January 24, 2005, alleging depression, post-traumatic stress disorder and high blood pressure with an onset date of September 21, 2004. (R. at 48) She was denied benefits on June 17, 2005 and filed a request for a hearing before an ALJ on August 3, 2005. Plaintiff was represented by counsel at the hearing held on September 13, 2006. On September 29, 2006, ALJ Alfred R. Tyminski denied Plaintiff's request for Social Security benefits.

A request for review by the Appeals Council was submitted on behalf of Plaintiff on November 20, 2006 and was subsequently denied on July 16, 2007. The decision of the ALJ became the Commissioner's final decision in the case. Plaintiff commenced this civil action on July 24, 2007 requesting review of the Commissioner's decision.

### B. Medical Evidence

In December 1999, Plaintiff was admitted to Samaritan Medical Center where she was treated by Dr. Maritza Santana for depression and suicidal thoughts. (R. at 81)[1] Dr. Santana diagnosed her with adjustment disorder with depressed mood and dependant personality disorder, and noted her global assessment of functioning (GAF)

---

[1] "R." refers to the Administrative Transcript on record.

score on admission was 45.[2] (R. at 83) Plaintiff was prescribed Celexa in September 2001, after beginning treatment with Dr. Ryan Tyler at Samaritan Family Health Center for severe stress and difficulty sleeping. (R. at 92-93) In October 2001, Dr. Norman Lesswing evaluated Plaintiff and noted that while "simple responsibilities may demand more energy than she can muster" and "she is highly distressed, with a mix of anxious and depressive dysphoria" (R. at 141), "Tammy Snyder would appear to have a good prognosis. . . ." (R. at 142)

From July 2002 through October 2004, Plaintiff maintained treatment with Dr. Ryan Tyler. (R. at 94-111) Over this time period Plaintiff suffered from panic attacks and depression, for which Dr. Tyler prescribed Celexa, and later Xanax and Effexor. (R. at 94, 97-98, 106, 109-111) Dr. Tyler also treated Plaintiff for hypertension with Altace at varying dosages, and in January 2006 Dr. Tyler noted her hypertension was in good control with medication.  (R. at 102, 105-106, 108-109, 112, 449) Plaintiff complained to Dr. Tyler over this period of episodes of lightheadedness, dizziness, near vertigo, and blurred vision.  (R. at 102, 105, 108, 111)

In October 2004 Plaintiff began treatment at the Mercy Center

---

[2]A GAF in the range of 41 to 50 signifies "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., Text Revision (2000)("Diagnostic and Statistical Manual of Mental Disorders - IV-TR"), p. 34.

for Behavioral Health. (R. at 143)  Upon admission, her prognosis was listed as good, meaning she was "likely to respond to treatment within 3 months." (R. at 147)  Her GAF scores throughout her treatment there were as follows: 60 upon admission;[3] 55 in November 2004; 40 in early December;[4] back up to 55 from mid-late December 2004 through early April 2005; 60 in late April through May 2005; and 55 in June through October of 2005.  (R. at 149, 159, 164, 169, 191, 194, 279, 184, 291, 300)  Her treating psychiatrist, Dr. Camillo, diagnosed Plaintiff with major depression post-traumatic stress disorder, for which she was prescribed a higher dosage of Effexor and one-on-one therapy.  (R. at 164)

During this time, Plaintiff continued to see Dr. Ryan Tyler for complaints of dizziness, vertigo, chest pain, hypertension, menorrhagia, and obesity.  (R. at 445, 449, 458)  She underwent a tonsillectomy on April 18, 2005, performed by Dr. Yousef Abu-Sbaih. (R. 225)  Dr. Abdul Latiff, a neurosurgeon, examined Plaintiff in May of 2005 for her recurrent migraine headaches, which Plaintiff reported occurred one or two times a week. (R. at 218)  Dr. Latiff continued to treat Plaintiff regularly for migraines through April of 2006. (R. at 486)  During her last visit with Dr. Latiff,

---

[3] A GAF of 51 to 60 signifies "moderate symptoms (e.g., flat affect and circumstantial speech occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders - IV-TR, p. 34

[4] A GAF of 31 to 40 signifies "some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids friends, neglects family, and unable to work . . . )." Diagnostic and Statistical Manual of Mental Disorders - IV-TR, p. 34

Plaintiff reported she only had one bad headache since her previous appointment in January of 2006. (R. at 486) Plaintiff testified at her hearing that within a six month period she had two or three bad headaches, which she usually controlled with Naproxyn. (R. at 541) In November of 2005 Plaintiff underwent a bilateral salpingo-oophorectomy, hysterectomy, and lysis of adhesions due to ovarian cysts, symptomatic fibroids and endometriosis.  (R. at 339, 348) At Plaintiff's December 2005 post-operative visit, Dr. Hawkins noted that she was "doing well overall . . . [and] [s]he ha[d] no complaints."  (R. at 335)

On March 2, 2005, Dr. William Kimball examined Plaintiff, and his report was filed with the New York State Department of Temporary and Disability Assistance.  (R. at 204-08).  Dr. Kimball diagnosed Plaintiff with depression, post-traumatic stress disorder and anxiety.  (R. at 208).  On June 14, 2005 Dr. Richard Nobel, a non-examining DDS Physician, determined that Plaintiff "retain[ed] the capacity for understanding, remembering, carrying out simple instructions, adapting to changes in the workplace, making simple work decisions and responding appropriately to coworkers and supervision. She retain[ed] the capacity for performance of unskilled work."  (R. at 249)

On September 9, 2006, Dr. Camillo completed a Medical Assessment of Ability to do Work-Related Activities.  (R. at 497) Dr. Camillo determined that Plaintiff had a poor ability to deal

5

with work stress; function independently; understand, remember, and carry out simple job instructions; and behave in an emotionally stable manner.  (R. at 497-98)  Dr. Camillo also determined that Plaintiff had a fair ability to relate to co-workers; deal with the public; use judgment; interact with supervisors; maintain attention and concentration; understand, remember, and carry out complex job instructions; maintain personal appearance; relate predictably in social situations; and demonstrate reliability; and had a good ability to follow work rules.  (R. at 497-98)

### III. DISCUSSION

**A. Standard of Review**

The Court's review of the Commissioner's determination is limited to two inquiries.  *See* 42 U.S.C. § 405(g).  First, the Court determines whether the Commissioner applied the correct legal standard.  *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Shane v. Chater*, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record.  *See Tejada*, 167 F.3d at 773; *Balsamo*, 142 F.3d at 79; *Cruz*, 912 F.2d at 11; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).  A Commissioner's finding will be deemed

conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also, Perez*, 77 F.3d at 46; *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("It is not the function of a reviewing court to determine de novo whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.") (citations omitted). In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1 982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).

**B. Analysis**

### 1. The Commissioner's Decision

The ALJ followed the sequential evaluation and made the following findings. At step one, the ALJ found that Plaintiff had not worked following the onset of her symptoms, and therefore did not engage in substantial gainful activity. (R. at 15)  The ALJ

7

concluded that the Plaintiff's major depression and anxiety disorders were severe impairments, but that Plaintiff's migraine headaches, upper extremity cysts, hypertension, and gynecological maladies were not severe impairments. (R. at 15) The ALJ found at step three that Plaintiff's impairments did not individually, or in combination, meet or medically equal a Listed impairment. (R. at 16)

At step four, the ALJ found that the Plaintiff's residual functional capacity ("RFC") was such that "she could understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting . . . ." (R. at 16) The ALJ compared the Plaintiff's RFC with the physical and mental demands of her past work and concluded that the Plaintiff was capable of performing her past relevant work as a cashier. (R. at 17) Therefore, the ALJ found Plaintiff was "not disabled" within the meaning of the Act. (R. at 17)

### 2. The Plaintiff's Claims

Plaintiff alleges (I) that the ALJ erroneously concluded that Plaintiff's impairments have not lasted for the twelve-month period required to establish disability; (II) the ALJ failed to properly assess the severity of Plaintiff's conditions; (III) the ALJ failed to properly assess Plaintiff's subjective allegations of pain and disabling symptoms; (IV) the ALJ failed to assign controlling

weight to the conclusions of Plaintiff's treating physician; (V) the ALJ failed to follow the steps required for evaluation of Plaintiff's mental disorders; (VI) the ALJ failed to assess Plaintiff's RFC; and (VII) the ALJ erroneously determined that Plaintiff can return to her past work.  (Pl. Br. at 8--24)

### a. The ALJ Followed the Proper Sequential Evaluation Process

The Plaintiff argues in Points I and V of her brief that the ALJ improperly concluded that Plaintiff's impairments did not last for the twelve-month requisite period before engaging in an evaluation of Plaintiff's claim of disability, and furthermore that the ALJ did not follow the steps required for evaluation of Plaintiff's mental disorders.  (Pl. Br. at 8-11, 18-22)  A review of the ALJ's decision shows that he did engage in the appropriate sequential evaluation.  (R. 15-18)  At step one, the ALJ found that Plaintiff had not worked following the onset of her symptoms, and therefore did not engage in substantial gainful activity.  (R. at 15)  The ALJ concluded that Plaintiff's major depression and anxiety disorders were severe impairments, but that Plaintiff's migraine headaches, upper extremity cysts, hypertension, and gynecological maladies were not severe impairments.  (R. at 15) The ALJ found at step three that Plaintiff's impairments did not individually, or in combination, meet or medically equal a listed impairment.  (R. at 16)

It was not until after step three that the ALJ discussed the

9

requisite twelve-month period. In his decision, the ALJ determined that "[w]hile the claimant indeed appears to have some level of significant chronic depression, her symptoms at full floridity did not last . . . for 12 continuous months or more under the Act." (R. at 17)  The ALJ based this determination on the reports of the treating psychiatrist, Dr. Camillo. Dr. Camillo rated Plaintiff's depression most often at a "7," on a scale from 1 to 10, 1 being a serious emotional complication, and 7 representing only a slight emotional impairment.  (R. at 16-17)

    Plaintiff argues that the ALJ did not rate and record the degree of functional limitation resulting from the mental impairment as required by 20 CFR § 404.1520a(b)(2), (c)(3) and 20 CFR § 416.920a(b)(2), (c)(1).  A review of the ALJ's decision shows that he agreed with the opinion of medical consultant C. Richard Nobel, specifically, that Plaintiff had mild to moderate degrees of functional limitation.  (*compare* R. at 15 with R. at 243 and 248) State agency psychiatric and/or psychological consultants are qualified experts in the field of Social Security disability, and an ALJ is entitled to rely upon their opinions in issuing decisions.  20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), and 404.1527(f)(2).  Further,

> "the report of a consultative physician can constitute substantial evidence." *Punch v. Barnhart*, No. 01 Civ. 3355, 2002 WL 1033543, at *12 (S.D.N.Y. May 21, 2002). Indeed, "[u]nder 20 C.F.R. § 404.1527, not only may the reports of consultative or non-examining physicians constitute substantial evidence of disability, they may even override the

10

> opinions of treating physicians." *Pease v. Astrue*, 06-CV-0264, 2008 WL 4371779, at *9 (N.D.N.Y. Sep.17, 2008)(*Snell v. Apfel*, 177 F.3d 128, 132-33 (2d Cir.1999); *Cruz v. Barnhart*, 04-CV-9011, 2006 WL 1228581, at *11-14 (S.D.N.Y. May 8, 2006)).

*Bossey v. Commissioner of Social Sec.*, 2009 WL 1293492, at * 8 (N.D.N.Y. May 05, 2009).

Based on the evidence of record, the Court finds that the ALJ followed the appropriate sequential evaluation in assessing Plaintiff's mental disorders and determining whether Plaintiff met the requisite time period, and further that the ALJ's decision was supported by substantial evidence.

### b. The ALJ Properly assessed Plaintiff's RFC, giving appropriate weight to medical opinions

Plaintiff argues in Points IV, VI, and VII of her brief that the ALJ failed to assess her residual functional capacity during his evaluation, that he failed to give controlling weight to the conclusions of the treating physician, and the ALJ erroneously determined that Plaintiff can return to her past work.  (Pl. Br. at 16-18, 22-24)  "RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; *i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-9p.  The ALJ is required to consider all of the medical evidence to determine the claimant's RFC, and this determination is reserved solely for the ALJ.  20 CFR § § 416.946(c), 404.1545, 404.1546.

11

The ALJ must assign controlling weight to the opinion of Plaintiff's treating physician if the opinion is well supported by medically acceptable clinical and laboratory diagnostic evidence and is not inconsistent with other substantial evidence. 20 CFR §§ 404.1527(d), 416.927(d); SSR 96-2P; *see also Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). "If the opinion is not given controlling weight, the ALJ must give good reasons in his decision for the weight given to the treating source's opinion." *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 228 (N.D.N.Y. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

Finally, evaluation of whether Plaintiff can perform her past work requires a finding of an RFC that permits Plaintiff to perform the demands of her past relevant work as she actually performed it or the functional demands of the occupation as generally required by employers throughout the national economy. SSR 82-61; *see also Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981); *Geracitano v. Callahan*, 979 F.Supp. 952, 955-56 (W.D.N.Y. 1997).

In finding that the Plaintiff "could understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting . . . (R. at 16)," the ALJ agreed with the opinion of medical consultant C. Richard Nobel (R. at 249). The ALJ then determined that while the Plaintiff's treating physician, Dr. Camillo, submitted to the ALJ that Plaintiff has a

poor ability to deal with work stress; to function independently; to understand, remember, and carry out simple job instructions; and to behave in an emotionally stable manner, these conclusions were inconsistent with Dr. Camillo's own office notes in the record and with the entirety of the medical evidence. Accordingly, the ALJ did not afford this opinion controlling weight. (R. at 17)

In determining whether Plaintiff can return to her past work, the ALJ concluded that work as a cashier does not require the performance of work related activities precluded by Plaintiff's RFC. (R. at 17) The description of a cashier job contained in the record characterizes the job as requiring the cashier to receive cash from customers, make change and use an adding machine or cash registers, including cash registers with electronic scanners to record customer purchases. (R. at 64) In finding that Plaintiff retained the RFC set forth above, the ALJ's determination that Plaintiff could return to her past work was reasonable and supported by substantial evidence.

The Court finds that the ALJ's determination of Plaintiff's RFC, the ALJ's unwillingness to give controlling weight to the conclusions of the treating physician, and the ALJ's conclusion that Plaintiff can return to her past work are supported by substantial evidence.

### c. The ALJ properly assessed the severity of Plaintiff's conditions and her subjective allegations of pain and disabling symptoms

Plaintiff argues in Points II and III of her brief that the ALJ failed to properly assess the severity of her conditions and assess her subjective allegations of pain and disabling symptoms. (Pl. Br. at 11-16)  An ALJ must consider all medical evidence of record when making a disability determination.  20 C.F.R. § 404.1520(a)(3).  An ALJ need not, however, specifically discuss the weight given to each piece of evidence considered if the rationale for his opinion can be gleaned from other portions of his decision or from clearly credible evidence. *Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)(citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

The ALJ found that Plaintiff's only severe impairments are major depression and anxiety disorder.  (R. at 15)  Plaintiff argues that the ALJ improperly failed to acknowledge the severity of her obesity, high blood pressure, chest pain, migraines, gynecological maladies, and the impact of her various surgeries. (Pl. Br. at 11)

The medical evidence in the record supports the ALJ's findings that Plaintiff's high blood pressure is stable on medication, and her gynecological maladies have been remedied.  (*see* R. at 15) Further, Plaintiff's examiner at a post-hysterectomy visit in December 2005 noted that Plaintiff was "doing well overall . . .

14

[and] [s]he ha[d] no complaints," indicating that Plaintiff's surgery was having a typical, not severe, effect on her. (R. at 335) The medical evidence of record also supports the ALJ's determination that Plaintiff's migraine headaches are too infrequent to be "severe" impairments. (*see* R. at 15, 218, 486, 541)

The ALJ's failure to acknowledge Plaintiff's obesity as a "severe" impairment is supported by the fact that though her weight at one point was 267 pounds, this was Plaintiff's weight in 2003-- before the alleged onset date of disability. (*see* R. at 48, 97) Further, her weight fluctuated from 239 pounds in 2004, down to 234 pounds in 2005, up to 265 pounds in February of 2006, but dropping back down to 224 pounds in September of 2006. (*see* R. at 105, 202, 447, 534) In July of 2006 Plaintiff reported that she was exercising by walking thirty to forty five minutes per day, *see* R. at 332, and at that time she weighed 253 pounds. (R. at 443).

The ALJ's failure to acknowledge Plaintiff's chest pain as a "severe" impairment is supported by the number of instances she complained of chest pain, *see* R. at 94, 105, 443, as compared to the number of times she denied chest pain or made no mention of it. (R. at 108-09, 111-13, 445-46, 448-49, 456, 458)[5] In addition to the medical evidence set forth above, Plaintiff alleged neither

---

[5] Although there are notes of "chest pain, atypical" in other pages of medical records, they are associated with what appears to be a mere note of Plaintiff's past EKG, which had a normal result, and at times coincide with dates Plaintiff denies chest pain. (R. at 108-09, 111-13, 445-46, 448-49, 458)

obesity nor chest pain as a disabling condition in filing her application or at the hearing, *see* R. at 48, 539-42, indicating she did not believe either were severe enough to preclude her from work activity. Accordingly, the ALJ properly assessed the severity of Plaintiff's conditions.

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). If the findings "are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Secretary, Dep't of Health & Human Services*, 728 F.2d 588, 591 (2d Cir. 1984); *see also McLaughlin v. Secretary of Health, Education and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982). Where a claimant alleges symptoms of a greater severity of impairment than can be shown by objective medical evidence, other evidence will be considered, including claimant's daily activities and the medications, methods and treatments used to alleviate her symptoms. 20 C.F.R. § 416.929(c)(3). It is the function of the Commissioner, not the reviewing court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Caroll v. Sec'y of Health and Human Serv.*, 705 F.2d 638, 642 (2d Cir. 1983).

After reviewing the medical evidence, the ALJ came to the conclusions set forth above regarding Plaintiff's severe impairments.  *(see* R. at 15)  In addition to the medical evidence considered by the ALJ, other factors were taken into consideration in determining the weight given by the ALJ to Plaintiff's credibility.  (R. at 16)  Specifically, the ALJ considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). *Id.*  Plaintiff reported to Dr. William Kimball that she does household chores such as cooking and cleaning, and helps her boyfriend's children to prepare for school.  (R. at 208)  Plaintiff drives herself to her appointments, and reported she enjoys crossword puzzles and doing needlepoint.  (R. at 204-05)  Plaintiff reported during an annual visit that she exercised daily by walking for a half an hour to forty five minutes.  (R. at 332)  Further, Plaintiff reported to Dr. Hawkins that she was looking forward to resuming her training at the Department of Social Services in a post-operative visit in December 2005.  (R. at 335)  The combination of her activities and statements contradict Plaintiff's subjective allegations of debilitating pain.

Accordingly, the ALJ's decision to discount the Plaintiff's credibility is supported by substantial evidence, and, therefore, must be upheld.

### IV.  CONCLUSION

In reviewing disability claims, a district court may affirm,

modify, or reverse the determination of the Commissioner with or without remanding the case for a rehearing. *See* 42 U.S.C. § 405(g). For the reasons previously stated, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, Plaintiff's motion is denied, and the determination of the Commissioner is AFFIRMED.

**IT IS SO ORDERED**

DATED: October 16, 2009

_____
Thomas J. McAvoy
Senior, U.S. District Judge